IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No. 08–cv–02657–WYD–KMT


DAVID L. COLLINS,

      Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,
CORRECTIONS CORPORATION OF AMERICA,
ARISTEDES ZAVARAS,
MERYL DOHRMANN,
JAMES LANDER,
J.D. SCOLLARD,
MARISSA SCHNELL,
SWARTZ,
PUETT, and
SARGENT REDIESEL,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

_____

**Kathleen M. Tafoya**
**United States Magistrate Judge**

      This case involves claims that Defendants violated Plaintiff's rights under the First,

Eighth, and Fourteenth Amendments.  This matter is before the court on Defendant Corrections

Corporation of America's (hereinafter "CCA") Motion to Dismiss ([Doc. No. 41] [filed April 13,

2009] [hereinafter "CCA Mot."]), and the "Motion to Dismiss" ([Doc. No. 50] [filed May 22,

2009] [hereinafter "State Defs.' Mot."]), filed by the Colorado Department of Corrections

(hereinafter "CDOC"), Aristedes W. Zavaras (hereinafter "Zavaras"), Meryl Dohrman

(hereinafter "Dohrman"), James Lander (hereinafter "Lander"), Jerie Scollard (hereinafter

"Scollard"), and Elizabeth Schwartz (hereinafter "Schwartz")[1].  Plaintiff filed his Response to

Defendant CCA's Motion on June 8, 2009 ([Doc. No. 54] [hereinafter "Resp. to CCA Mot."]),

and his Response to the State Defendants' Motion on August 3, 2009([Doc. No. 70] [hereinafter

"Resp. to State Defs.' Mot."]).  Defendant CCA filed its Reply on June 16, 2009 ([Doc. No. 59]

[hereinafter "CCA Reply"]).  The State Defendants did not file a Reply.  Jurisdiction is premised

upon 42 U.S.C. § 1983 (2008).  These motions are ripe for review and recommendation.[2]

## STATEMENT OF THE CASE

The following facts are taken from Plaintiff's *pro se* Complaint ([Doc. No. 24] [filed

February 24, 2009] [hereinafter "Compl."]) and the parties' submissions with respect to this

Recommendation.  Plaintiff, David L. Collins, is a prisoner in the custody of the CDOC who is

currently incarcerated at the Kit Carson Correctional Center (hereinafter "KCCC") in Burlington,

Colorado.  (Compl. at 2.)

---

[1] Hereinafter, Defendants CDOC, Zavaras, Dohrman, Lander, Scollard, and Schwartz shall be referred to collectively as the "State Defendants," where appropriate.

[2] The Complaint also names Marissa Schnell, Puette, and Sergeant Rediesel as Defendants.  (Compl. at 1.)  However, these defendants have not been served.  According to the CDOC, Marissa Schnell is no longer employed by the State of Colorado (Doc. No. 35); the summons issued to Ms. Schnell was returned unexecuted (Doc. No. 45).  The summons issued to Puett and Sergeant Rediesel were also returned unexecuted since, according to Defendant CCA, they are no longer employed by the CCA.  (Doc. No. 40.)  As of the date of this recommendation, there has not been proper service upon these defendants, nor any updated location information provided.

In Claim One, Plaintiff alleges that Defendant CDOC and its executive director, Defendant Zavaras, knew of a "long standing" history of "extortion[], assaults, and murders committed against sex offenders . . . by gang members" in CDOC facilities.  (*Id*. at 6.)  Plaintiff states these defendants acquired this knowledge from unspecified CDOC investigations, prisoner incident statements, witness accounts, inmate informants, and prison records.  (*Id*.)  Plaintiff states that he is a convicted sex offender.  (*Id*.)  Plaintiff claims, without particularity, that Defendants CDOC and Zavaras "created [a] policy . . . of [housing] convicted sex-offenders with gang members."  (*Id*.)  Plaintiff contends that Defendants CDOC and Zavaras have failed to provide Plaintiff and other convicted sex offenders protection and safety from "these known substantial risks of harm" and have "continued to" expose Plaintiff and other convicted sex offenders to "these substantial serious risks of harm by placing them into facility after facility contai[ning] gang members."  (*Id*. at 7.)  Plaintiff claims "[t]hese known substantial risks of harm" have "caused the [p]laintiff physical injury," however does not state the particulars of any injury.  (*Id*.)  Plaintiff contends that Defendants CDOC and Zavaras violated his and other convicted sex offenders' Eighth and Fourteenth Amendment rights.  (*Id*. at 6.)  With the exception of the fact that Plaintiff is a convicted sex offender, every one of the Plaintiff's claims are his conclusions and bare assertions and not facts.  Plaintiff offers no facts in Claim One showing that he or any other sex offender was housed with gang members.

In Claim Two, Plaintiff states that in August of 2003, he was convicted of a sex offense.  (*Id.* at 8.)  Plaintiff claims that "as part of [his] incarceration," Colorado law mandates that he undergo sex offender treatment.  (*Id*.)  Plaintiff alleges the "statutory scheme further mandates

. . . that the Parole Board consider whether the Plaintiff has had successful progression in treatment in determining whether [he] is eligible for parole." (*Id*.)  During the time period relevant to this litigation, Plaintiff states that Defendant Dohrman was a SOTMP Phase II therapist at Fremont Correctional Facility (hereinafter "FCF") and that Defendant Lander was the SOTMP Director at FCF for Phase I of the program.  (*Id*. at 3.)  As previously noted, Plaintiff asserts that Zavaras is the "Executive Director, trustee CDOC."  (*Id.* at 2.)  Plaintiff claims that on April 29, 2008, Defendants Dohrman, Lander and Zavaras removed him from sex offender treatment at FCF and transferred him to KCCC "where Plaintiff cannot participate in the mandated sex offender treatment."  (*Id*.)  Plaintiff maintains that he possesses a "state created protected 'liberty interest' . . . [in continued] sex offender treatment during [his] incarceration . . . [in order] to be eligible for consideration for release on parole."  (*Id*.)  Plaintiff claims Defendants Dohrman, Lander and Zavaras "terminated [him] from sex offender treatment without the minium [sic] protections afforded under procedural due process," in violation of his rights under the Due Process Clause of the Fourteenth Amendment.  (*Id*. at 9.)  Plaintiff claims that his move to KCCC precludes any treatment because he "cannot participate in the mandated sex offender treatment . . . ."  (*Id*.)  Plaintiff does not state why he cannot participate at KCCC.

During the time period relevant to Claim Three, Plaintiff states Defendants Scollard, Schnell, and Schwartz were SOTMP Phase I Therapists at FCF.  (*Id*. at 3.)  Plaintiff states that on January 17, 2007, Defendant Scollard and Schnell "left documentation" detailing Plaintiff's conviction, sentence, and treatment matters in the "returned homework of one of the offenders in the [sex offender treatment] group."  (*Id*. at 10.)  Plaintiff claims the inmate who received this

4

information later publicized it.  (*Id*.)  After learning of this, Plaintiff alleges he filed a formal

written complaint to the Sex Offender Management Board (hereinafter "SOMB") and Defendant

Lander (hereinafter "SOMB complaint") asserting, "Defendants Scollard and Schnell committed

a breach of contract and . . . confidentiality that placed Plaintiff's life in danger from other

offenders."  (*Id*.)  Plaintiff does not state the date on which he filed the SOMB complaint.

According to Plaintiff, "in response" to learning of Plaintiff's SOMB complaint, Defendant

Scollard requested a "termination hearing" concerning Plaintiff to be presented to the SOMB.

(*Id*.)  Again, Plaintiff does not indicate the date on which Defendant Scollard allegedly learned

of his SOMB complaint or when Defendant Scollard requested a "termination hearing."  (*Id*.)

Plaintiff states that on July 3, 2007, the SOMB conducted a termination hearing and determined

that Plaintiff would not be terminated from treatment.  (*Id*.)  Plaintiff claims that, "[i]n response

[to the SOMB's refusal to terminate him], Defendant Meryl Dohrmann [sic] and Defendant

Scollard . . . conducted an 'Exit Interview' on the Plaintiff, and determined . . . [Plaintiff] had not

conformed one hundred percent with treatment."  (*Id*.)  Plaintiff does not provide a date or

approximate date of the "Exit Interview."  However, on or about April 29, 2008, Plaintiff was

transferred to KCCC, almost ten months after the alleged "termination hearing."  (*Id*.)  Plaintiff

claims Defendants Scollard, Schnell and Schwartz conspired with Defendants Lander and

Dohrman to have Plaintiff terminated from the sex offender treatment program and transferred to

KCCC in retaliation for filing the formal written complaint to the SOMB and Defendant Lander.

(*Id*. at 11.)  Plaintiff states that " 'but for' this conspired retaliation [he] would not of [sic] been

terminated or transferred."  (*Id*.)

In Claim Four, Plaintiff alleges when he was transferred to KCCC on April 29, 2008, he was placed in "Living Unit-EC[] for orientation and screening for placement into the facility." (*Id*. at 12.)  Plaintiff claims Defendant CCA is a "private prison contractor, contracted by Aristedes Zavaras of [the] CDOC," and "[doing business as] Kit Carson Correctional Center at Burlington, Colorado."  (Compl. at 2, 4.)  Plaintiff states that Defendant Puett was the "KCCC Unit Manager/Trustee" and Defendant Rediesel was the "KCCC Living Unit 'E' Sargent/Trustee [sic]."  (*Id*. at 3.)  Plaintiff alleges that on May 6, 2008, Defendant Puett assigned Plaintiff to "Living Unit-EB, which was a [l]iving [u]nit designated for 'gang members' only."  (*Id*. at 12.)  That evening, Plaintiff claims he was "assaulted by two 'white supremicist [sic] prison gang members' " assigned to the same living unit as Plaintiff.  (*Id*.)  Plaintiff maintains that Defendant Puett knew Plaintiff was a sex offender and intentionally placed him in a hostile environment "with deliberate indifference to [his] safety."  (*Id*.)  Plaintiff claims there were no "reasonable measures of protection and safety" for him in the living unit to which he was assigned.  (*Id*.)  Plaintiff claims Defendants Puett and Rediesel had a "[c]onstitutional duty to provide the Plaintiff safety and protection from an hostile environment of known substantial serious risk[s] of harm," but were deliberately indifferent to his safety, in violation of his Eighth Amendment rights.  (*Id*.)

Plaintiff seeks punitive damages "for physical and emotional injuries and damages" caused by Defendants.  (*Id*. at 15.)  Plaintiff also seeks injunctive relief: 1) requiring Plaintiff to be transferred to FCF or Arrowhead Correctional Facility; 2) requiring that he be provided with credit and a "pass" classification for Phase I of sex offender treatment, and purging all negative

notations made by therapists in his file; 3) requiring Defendants to place Plaintiff in Phase II sex offender treatment at the conclusion of this litigation; and 4) barring Defendants from housing Plaintiff in "any private contract facilities, . . . namely CCA-owned/run [c]enters and any out of [s]tate [p]rison[] facilities."  (*Id.*)  Plaintiff also seeks a declaration that "the conditions of confinement described [in the Complaint] violated Plaintiff's [c]onstitutional [r]ights . . . to be free from cruel and unusual punishment."  (*Id.*)

The State Defendants move to dismiss on the following grounds: 1) Defendant CDOC is entitled to immunity pursuant to the Eleventh Amendment; 2) Plaintiff has failed to allege the personal participation of Defendants Zavaras and Schwartz; 3) Plaintiff has failed to state any claim for a violation of the Eighth Amendment; 4) Plaintiff has failed to state a claim for a violation of the Due Process Clause of the Fourteenth Amendment; 5) Plaintiff has failed to state a claim for a violation of the First Amendment; 6) Plaintiff's claims for damages are barred pursuant to the Prison Litigation Reform Act (hereinafter "PLRA"); and 7) the State Defendants are entitled to qualified immunity.  (State Defs.' Mot.)  Defendant CCA moves to dismiss claiming Plaintiff has failed to state any claim against it.  (CCA Mot.)

## LEGAL STANDARD

### *1.*     **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to

less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**2.       *Fed. R. Civ. P. 12(b)(6) - Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1006, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint

8

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

Notwithstanding, the court "need not accept conclusory allegations without supporting factual averments." *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

9

the line between possibility and plausibility of 'entitlement to relief.' " *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

**3.      *Prison Litigation Reform Act***

Section 1997e(e) of the PLRA provides in pertinent part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e) (2008). Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted. *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (applying Section 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion). Although Section 1997e(e) bars recovery of mental or emotional injury damages absent an allegation of physical injury, it does not bar recovery of punitive damages, nominal damages, declaratory or injunctive relief. *Id.* at 881 (noting that punitive damages may be awarded for constitutional violations without a showing of compensable injury); *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 808 (10th Cir. 1999).

In this case, the only monetary damages sought by Plaintiff are "norminal [sic] Punitive Damages for Physical and Emotional Injuries," and "Punitive Damages to be determined by the court and/or jury." (Compl. at 15.) The court construes this as a claim for nominal and punitive damages. The Complaint does not contain a explicit request for compensatory damages, and Plaintiff's request for punitive and/or nominal damages would not be barred by Section 1997e(e). *See Searles,* 251 F.3d at 881. Plaintiff's claims for declaratory and injunctive relief are likewise allowable pursuant to the PLRA.

10

# ANALYSIS

## I.        *Eleventh Amendment Immunity*

Section 1983 imposes civil liability upon any "person" who subjects another to a constitutional deprivation.  42 U.S.C. § 1983.  Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for every such litigant.  A claim for relief against the state itself, or a state agency, is barred by the Eleventh Amendment.  *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment . . . This jurisdictional bar applies regardless of the nature of the relief sought." (internal citations omitted)); *Allen v. Figuera*, 2008 WL 4829744, at *1 (D. Colo. 2008) ("the CDOC, as an agency of the State, is immune from suit, whether for monetary damages or injunctive relief, under the Eleventh Amendment").  Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies.  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985).  There has been no waiver of immunity by Colorado or its state agencies from suits under Section 1983, nor has Congress abrogated such immunity.  Therefore, the CDOC is entitled to absolute immunity under the Eleventh Amendment against all claims brought by Plaintiff, leaving Defendant Zavaras as the only remaining defendant in Claim One.

11

Plaintiff's Complaint does not designate the capacity in which each State Defendant is being sued.  However, the primary relief sought is injunctive, and given this court's mandate to construe *pro se* pleadings less stringently than those drafted by attorneys, *Trackwell*, 472 F.3d at 1243, the court construes the Complaint as asserting claims against all State Defendants in their individual and official capacities.  *See Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993) ("where the complaint fails to specify the capacity in which the government official is sued, we look to the substance of the pleadings and the course of the proceedings in order to determine whether the suit is for individual or official liability"); *Fenner v. Suthers*, 194 F. Supp. 2d 1146, 1149 (D. Colo. 2002) ("plaintiff's complaint here seeks injunctive relief and is thus readily construed as a suit against defendants in their official capacities").

It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state."  *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994). Plaintiff's claims for monetary relief against Defendants Zavaras, Dohrman, Lander, Scollard, and Schwartz in their official capacities constitute claims against the Colorado Department of Corrections.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office").  Therefore, Plaintiff's official-capacity claims for monetary relief against the State Defendants are barred by the Eleventh Amendment.  *See id.; Bennett*, 17 F.3d at 1267.  At this point, therefore, only Plaintiff's official-capacity claims for declaratory and/or injunctive relief against the State Defendants survive.

12

The Supreme Court has recognized an exception to Eleventh Amendment immunity for actions where a plaintiff is seeking prospective enforcement of federal rights. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908); *Hunt v. Colo. Dept. of Corr.*, 271 F. App'x 778 (10th Cir. 2008). The *Ex Parte Young* exception applies in cases when a plaintiff seeks only declaratory and/or prospective injunctive relief and has alleged an ongoing violation of federal law by state officials acting in their official capacities. *See Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008); *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007); *Ellis v. Univ. of Kansas Medical Center*, 163 F.3d 1186, 1196 (10th Cir. 1998) ("While the Eleventh Amendment bars federal court jurisdiction over a state agency for both money damages and injunctive relief, or a state official acting in her official capacity in a suit for damages, a suit for prospective injunctive relief against a state official acting in her official or individual capacity may still be brought in federal court pursuant to the *Ex Parte Young* doctrine."). *Ex Parte Young* makes it clear that the exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past." *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted). Plaintiff seeks a declaration "that the conditions of confinement described herein violated Plaintiff's Constitutional Rights . . . to be free from cruel and unusual punishment." (Compl. at 15.) Since Plaintiff seeks precisely that type of declaration that is prohibited, the request for declaratory relief is barred pursuant to the Eleventh Amendment for all official capacity claims.

## II.     *Personal Participation*

Defendants Zavaras and Schwartz contend they should be dismissed in their individual

capacities as to all claims because Plaintiff has failed to allege their personal participation in any

event underlying his claims.  (State Defs.' Mot. at 6.)  Personal participation is an essential

allegation in a section 1983 civil rights action.  *Bennett v. Passic*, 545 F.2d 1260, 1262–63.  To

establish personal liability, a plaintiff must show that the official caused the deprivation of a

federal right.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  There must be an affirmative link

between the alleged constitutional violation and each defendant's participation, control or

direction, or failure to supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir.

1993).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has violated

the Constitution."  *Iqbal*, 129 S. Ct. at 1948 (emphasis added).

"[T]o state a claim in federal court, a complaint must explain what each defendant did to

him or her; when the defendant did it; how the defendant's action harmed him or her, and what

specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown*

*B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  "Courts should look to the specific

allegations in the complaint to determine whether they plausibly support a legal claim for relief."

*Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).

Defendant Zavaras' name appears in the Complaint in relation to Claims One, Two,

Three, and Four.  Claims One and Four allege Defendant Zavaras "created [a] policy . . . of

placing convicted sex offenders with gang members" despite knowing of a "longstanding"

14

animosity held by gang member-inmates towards convicted sex offenders like the plaintiff. (Compl. at 6.)  However, such a statement, without facts to support it, is a bare assertion to which no credence is subscribed.  *See Iqbal*, 129 S. Ct. at 1940.  Additionally, "past input into the formulation of prison regulations . . . is a connection far too attenuated to support liability under § 1983," even if Plaintiff had asserted such facts against Zavaras.  *Grimsley v. MacKay*, 93 F.3d 676, 680 (10th Cir. 1996).  Plaintiff has not pled that Defendant Zavaras had any direct contact with him, was present during his placement in any prison or living unit with gang members, or actually knew of and acquiesced in Plaintiff's housing placement.  Plaintiff has failed to allege an affirmative link between the alleged constitutional deprivation and Defendant Zavaras' personal participation, exercise of control or direction, or failure to supervise.  *See Butler*, 992 F.2d at 1055.

Furthermore, the Supreme Court has concluded that bare assertions regarding an invidious policy are not entitled to the assumption of truth because they amount to "nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." *Iqbal*, 129 S. Ct. at 1951 (quoting *Twombly,* 550 U.S. at 555).  *See also Maldonado v. Fontanes*, 568 F.3d 263, 274 (1st Cir. 2009) (a generalized allegation that the Mayor planned, personally participated in, and executed the raids in concert with others, but the others are named as the persons with specific administrative responsibilities as to the public housing complexes does not state a claim against the mayor that survives *Iqbal*.).  In this case the plaintiff alleges a policy to house sex offenders with gang members, but at best, in Claim Four, cites only one instance in which anyone was housed with a "gang member."  Additionally, the persons who had specific

15

responsibility have been named in the remaining claims.  The claims against Zavaras are completely and totally bare assertions with no factual underpinnings whatsoever.

In Claim Two, Plaintiff alleges Defendant Zavaras "purposefully, without opportunity to deliberate terminated [him] from sex offender treatment," and "ignored and [was] deliberately indifferent to the statutory requirement mandating sex offender treatment for the plaintiff." (Compl. at 9.)  However, such bare assertions amount to a formulaic recitation of the elements of a constitutional claim and are not entitled to the assumption of truth.  *See Iqbal*, 129 S. Ct. at 1951.  Plaintiff has failed to explain specifically what Defendant Zavaras did to him; when the defendant did it; and how the defendant's action harmed him.  *See Nasious*, 492 F.3d at 1163.

Similarly, in Claim Three, Plaintiff asserts that Scollard and Schnell, persons who work in the SOTMP at FCF, and Zavaras, terminated him from participation in sex offender therapy. *See Maldonado*, 568 F.3d at 274.  Insofar as Plaintiff seeks to hold Defendant Zavaras responsible in his individual capacity solely on the basis of his supervisory position as Executive Director of the CDOC for actions taken by his subordinates, such vicarious liability is inapplicable to Section 1983 suits.  *Iqbal*, 129 S. Ct. at 1948.

Defendant Schwartz's name appears in the Complaint only in relation to Claim Three. However, it is unclear whether Plaintiff actually alleges any wrongdoing or harmful conduct on the part of Defendant Schwartz.  After alleging that Dohrman and Scollard determined that Plaintiff "had not conformed one hundred percent with treatment," Plaintiff states, "Defendant Schwartz already stated that Plaintiff did pass this 'Exit Interview' . . . ."  (Compl. at 10.)  It appears that Plaintiff felt Defendant Schwartz was not in accord with the determination by

16

Dohrman and Scollard to terminate him unsuccessfully from sex offender treatment.  This statement clearly does not suffice to allege that Defendant Schwartz personally participated in the alleged retaliatory transfer.  Plaintiff's only other allegations against Defendant Schwartz are that she "retalaliated [sic]" against him and "conspired with" Defendants Lander and Dohrman to have Plaintiff terminated.  (*Id.* at 11.)  However, such legal conclusions and bare assertions are not entitled to the presumption of truth and therefore do not suffice to allege Defendant Schwartz's personal participation Claim Three.  *See Iqbal*, 129 S. Ct. at 1949–51.

The court finds that Plaintiff has failed to allege the personal participation of Defendants Zavaras and Schwartz in any claim contained in the Complaint.  Accordingly, the court recommends Defendants Zavaras and Schwartz be dismissed entirely in their individual capacities.

### III.    *Claim One*

In Claim One, Plaintiff seeks to hold Defendant Zavaras liable in his official capacity for an alleged violation of his Eighth Amendment rights.  (*Id.* at 6–7.)  Plaintiff seeks monetary and declaratory relief.[3]  (*Id.* at 14–15.)  However, as noted *supra*, Defendant Zavaras is immune from such claims pursuant to the Eleventh Amendment.  Although Plaintiff has not sought injunctive relief based on the allegations in Claim One, such relief would not be warranted in this case

---

[3] In the request for relief, *inter alia*, Plaintiff requests "Declatory [sic] Injunction that the conditions of confinement described herein violated Plaintiff's Constitutional Rights . . . to be free from cruel and unusual punishment, torture."  The court construes this as a request for declaratory relief for past unconstitutional activity.

because as noted herein, Plaintiff has failed to state a claim for an Eighth Amendment violation against Defendant Zavaras in any capacity.

"The Eighth Amendment requires prison officials to 'provide humane conditions of confinement,' which includes taking 'reasonable measures to guarantee the safety of inmates.' " *Giron v. Corr. Corp. of America,* 191 F.3d 1281, 1285 (10th Cir. 1999) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "An inmate claiming that officials failed to prevent harm first 'must show that [he] is incarcerated under conditions posing a substantial risk of serious harm.' " *Id.* (citing *Farmer*, 511 U.S. at 834). The inmate must then "demonstrate that the officials had a sufficiently culpable state of mind—that is, their acts or omission arose from deliberate indifference to inmate health or safety." *Id.* (internal quotation marks and citation omitted). However, "[s]uits against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law." *Id.* (quoting *Graham*, 473 U.S. at 166) (internal quotations omitted). Thus, in order to state an official-capacity claim against Defendant Zavaras, if he had not had immunity as discussed *infra*, Plaintiff would be required to show his alleged placement with and assault by gang members at KCCC was, at least in part, attributable to a CDOC policy or custom.

Here, Plaintiff claims Defendants CDOC and Zavaras "created [a] policy . . . of [housing] convicted sex-offenders with gang members." (Compl. at 6.) Plaintiff has failed to allege any

18

facts evidencing such a policy, and the court "need not accept conclusory allegations without supporting factual averments." *Southern Disposal*, 161 F.3d at 1262.  Indeed, Plaintiff concludes that such a policy exists on the basis of the one incident on May 6, 2008 in which in which he was housed with gang members at KCCC and "assaulted." (*See id.* at 12.)  One incident, however, does not constitute a policy.  Since Plaintiff has failed to show that a CDOC policy or custom of housing sex offenders with gang members existed, much less caused the Eighth Amendment violation alleged in Claim One, Plaintiff has failed to state an official-capacity claim against Defendant Zavaras and Defendant Zavaras is properly dismissed substantively as well as pursuant to immunity provisions as to Claim One.

**IV.    Claim Two**

Plaintiff alleges Defendants Zavaras, Lander and Dohrman terminated him from the sex offender treatment program in violation of his rights under the Due Process Clause of the Fourteenth Amendment.  (Compl. at 8.)  "The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property" *Chambers v. Colo. Dept. of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (quotations omitted).  Plaintiff must make two showings in order to proceed on a procedural due process claim.  *See Bartell v. Aurora Pub. Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001) (overruled on other grounds).  First, he must show that he possesses a protected liberty interest.  *See id.*; *Veile v. Martinson*, 258 F.3d 1180, 1184–85 (10th Cir. 2001).  Second, he must show that the procedures used in addressing his liberty interest were inadequate under the circumstances.  *See Bartell*, 263 F.3d at 1149.

The State Defendants contend Plaintiff has failed to show he possesses a protected liberty interest. (State Defs.' Mot. at 10–11.)  Assuming, without so ruling on the limited facts presented in this claim, that Plaintiff can claim a liberty interest in his sex offender treatment, *see Beebe v. Heil*, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004), the Complaint is devoid of facts which, if proven, would show that the procedures used in addressing such a liberty interest were inadequate under the circumstances.  Plaintiff merely concludes that he was terminated from treatment "without the minium [sic] protections afforded under procedural due process" (Compl. at 9), without any further explanation of what process he believes he was entitled to or what process he did or did not receive.  *See Mitchner v. Shelton*, 2007 WL 2219282 at *3 (D. Kan. 2007) (finding that plaintiff failed to state a claim for violation of due process because he "failed to describe what process was due that was denied").  Indeed, such a conclusory allegation is not entitled to the presumption of truth on a Rule 12(b)(6) motion to dismiss. *Iqbal* at 1949–51.

Furthermore, the Tenth Circuit has noted that

> [a]s a general rule, before officials may take actions that affect these protected liberty interests, they must afford a prisoner (a) advance written notice of the charges; (b) an opportunity . . . to call witnesses and present documentary evidence in his defense; and (c) a written statement by the factfinder of the evidence relied upon on and the reasons for the disciplinary action.

*Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005).  According to the Complaint, Plaintiff received a termination hearing July 3, 2007, at which the SOMB determined Plaintiff would not be terminated and would be permitted to continue through Phase I of the SOTMP.  (Compl. at 10.)  Plaintiff's only factual allegation in any way touching upon whether the procedures attendant to his alleged later termination from sex offender treatment were deficient comes in the

20

context of his retaliation claim in Claim Three, where Plaintiff alleges, "Defendant Dohrman . . .

conducted an 'Exit Interview' [with] the Plaintiff," at which Plaintiff was informed that he had

not conformed "one hundred percent" with treatment.  (Compl. at 10.)  Plaintiff has failed to

allege that Defendant Dohrman's exit interview was the *only* "process" he received prior to his

termination, or that he was denied advance written notice, an opportunity to call witnesses and

present evidence in his defense, or a written statement of the evidence relied upon on and the

reasons for his termination.  *See Wilson*, 430 F.3d at 1117.  In fact, since the Board had

specifically found the Plaintiff would not be terminated from treatment, it is unclear whether

Plaintiff was simply being transferred to another facility, an event which occurred some nine

months after his SOMB hearing, or whether there was an issue with Plaintiff's progression to the

next treatment level.  Without more, this singular allegation does not suffice to indicate that the

procedures used in addressing Plaintiff's termination were inadequate; nor does it provide a basis

upon which to plausibly hold Defendants Dohrman or Lander liable for allegedly violating

Plaintiff's Fourteenth Amendment rights.[4]  Therefore, Defendants Dohrman, Lander and Zavaras

are properly dismissed in their individual and official capacities as to Plaintiff's Claim Two.

---

[4] As noted *supra*, there was no personal participation alleged against Zavaras.  To the
extent Plaintiff attempts to bring an official capacity claim against Zavaras pursuant to *Ex Parte
Young*, 209 U.S. 123 (1908), for prospective injunctive relief, Plaintiff's failure to set forth facts
sufficient to plausibly state a claim for any constitutional violation bars such relief.

V.      *Claim Three*

Plaintiff claims Defendants Scollard, Schnell, Schwartz[5], Lander and Dohrman

transferred him to KCCC, effectively removing him from the sex offender treatment program, in

retaliation for filing a formal written complaint with the SOMB and Defendant Lander.  (Compl.

at 10–11.)  The State Defendants contend that Plaintiff's allegations fail to state a claim for

retaliation in violation of the First Amendment.  (State Defs.' Mot. at 11–13.)

"To establish a First Amendment retaliation claim, a plaintiff must show that (1) he was

engaged in constitutionally protected activity, (2) the government's actions caused him injury

that would chill a person of ordinary firmness from continuing to engage in that activity, and (3)

the government's actions were substantially motivated as a response to his constitutionally

protected conduct."  *Nielander v. Bd. of County Com'rs of Republic, Kan.*, ___ F.3d ____, 2009

WL 2713196, at *7 (10th Cir. 2009) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir.

2000)).  "To establish a claim for retaliation, a plaintiff must show that 'but for the retaliatory

motive, the incidents to which he refers . . . would not have taken place.' "  *Dawson v. Johnson*,

266 F. App'x 713, 716 (10th Cir. 2008) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th

Cir. 1990)).  A plaintiff must allege "specific facts showing retaliation because of the exercise of

the prisoner's constitutional rights."  *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)

(internal quotation marks and citation omitted).  "The inmate must allege more than his personal

---

[5] *See* Section II, *supra*.

belief that he is the victim of retaliation." *Boyd v. T'Kach,* 2008 WL 784398 at *5 (D. Colo. 2008) (quoting *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999)).

In this case, even if Plaintiff had satisfied the first two elements of a proper retaliation claim, he has failed to allege facts which, if proven, would show that his transfer was substantially motivated as a response to his filing the SOMB complaint.[6] There is no indication that "but for" Plaintiff's filing the formal written complaint, his termination and transfer would not have taken place. Plaintiff does not provide dates for the two events upon which his entire claim rests—his filing the SOMB complaint and Defendants learning of the complaint. However the event which Plaintiff complained about occurred on January 17, 2007 (Compl. at 10). The date of the SOMB hearing was July 3, 2007. Therefore, Plaintiff must have filed the SOMB complaint between January 17, 2007 and July 3, 2007. Plaintiff's transfer to KCCC occurred nearly ten months after the SOMB hearing on Plaintiff's complaint, on April 29, 2008. Such a prolonged time period does not infer any retaliatory motive; in fact, an opposite inference is fairly warranted. Plaintiff has also failed to provide the date on which Defendants Dohrman and Scollard allegedly conducted an exit interview and found Plaintiff nonconforming with his sex offender treatment. The facts alleged by Plaintiff show that his lack of performance in the SOTMP caused his failure to progress. (*See* Compl. at 10.) The Complaint is devoid of any

---

[6] Plaintiff was not terminated from SOTMP during the July 3, 2007 termination hearing. (Compl. at 10.) In fact, Plaintiff was allowed "to continue [his] current Phase I sex offender treatment program." (*Id.*) Therefore, said termination hearing cannot plausibly serve as the basis of Plaintiff's retaliation claim since it did not cause him to suffer any injury.

factual allegation evidencing a retaliatory motive behind Plaintiff's transfer which would plausibly suggest a claim for relief.

Plaintiff's failure to allege facts showing that any defendant was substantially motivated to transfer him to KCCC in response to his filing the SOMB complaint is fatal to his First Amendment retaliation claim.  Accordingly, Defendants Scollard, Schwartz, Lander and Dohrman are properly dismissed as to Claim Three in their individual and official capacities.

## VI.   Claim Four

As a preliminary matter, although Plaintiff has named CCA as a defendant in this case, neither Claim Four nor any other claim clearly indicate the basis upon which Plaintiff seeks to hold CCA liable under Section 1983.  However, given this court's mandate to review *pro se* pleadings liberally, *Trackwell*, 472 F.3d at 1243, the court construes Claim Four as seeking to impose liability on CCA for the alleged violation of Plaintiff's Eighth Amendment rights by Defendants Puett and Rediesel, CCA employees at the time relevant to this action.  (CCA Mot. at 2.)

In Claim Four, Plaintiff alleges Defendants Puett and Rediesel were deliberately indifferent to his safety, in violation of his Eighth Amendment rights by placing him in a living unit at KCCC designated for " 'gang members' only."  (Compl. at 12.)  Defendant CCA contends Plaintiff has failed to state a claim against it for violation of Plaintiff's Eighth Amendment rights.  (Mot. at 2.)

A private corporation is liable under Section 1983 only when an official policy or custom of the corporation causes or is the "moving force of the constitutional violation."  *Monell v.*

24

*Dept. of Social Svcs.*, 436 U.S. 658 (1978).  *See also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (traditional municipal liability principles apply to claims brought pursuant to 42 U.S.C. § 1983 against private corporations).

"[T]o establish municipal liability a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 993–94 (10th Cir. 1996) (citing *Canton v. Harris*, 489 U.S. 378, 385 (1989)).  Moreover, a municipality can be held liable under Section 1983 "if the final policymaker, as identified by statute, is the one who takes the unconstitutional action." *Melton v. Oklahoma City*, 879 F.2d 706, 724 (10th Cir. 1989) (citing *St. Louis v. Praprotnik*, 485 U.S. 112 (1988)).  Thus, Defendant CCA would incur liability under Section 1983 only if Plaintiff's housing in a living unit designated for gang members resulted from a CCA policy or custom.  *See Smedley v. Corr. Corp. of America*, 175 F. App'x 943, 946 (10th Cir. 2005) ("in order to hold CCA liable for the alleged tortious acts of its agents, [the plaintiff] must show that CCA directly caused the constitutional violation by instituting an 'official municipal policy of some nature,' that was the 'direct cause' or 'moving force' behind the constitutional violations" (citations omitted)).

The Complaint makes no mention of any CCA customs or policies, and is devoid of any particularities about a physical injury suffered by Plaintiff.  In fact, if the unit actually was designated for gang members only—a statement presumed true at this stage but one which seems implausible to this court—it would show a policy <u>not</u> to place sex offenders, or anyone other than gang members, into that particular housing unit.  Further, there is no factual basis in the

25

Complaint concerning how the conduct of Defendants Puett and Rediesel, were in any way attributable to a CCA policy or custom.  The Complaint alleges one discrete incident which took place on May 6, 2008.  (Compl. at 12.)

Furthermore, Plaintiff has not alleged Defendant Puett was in any manner acting as a policymaker at KCCC.[7]  The court must "look primarily to two factors in deciding whether an official is a final policymaker within his area of authority: first, whether his 'discretionary decisions are constrained by general policies enacted by others,' and second, whether those 'decisions are reviewable by others.' "  *Milligan-Hitt v. Bd. of Trustees of Sheridan County School Dist. No. Two*, 523 F.3d 1219, 1228 (10th Cir. 2008) (quoting *Dill v. City of Edmond*, 155 F.3d 1193, 1211 (10th Cir. 1998) (internal quotation marks omitted)).  The Complaint is silent as to these matters, however, pursuant to Colorado law, the KCCC warden is the administrative head of the correctional facility.  *See* Colo. Rev. Stat. § 17-1-102(9) (defining the warden as the "administrative head of a correctional facility").  There is no indication the decisions of Defendants Puett and Rediesel—as Unit Manager and Unit Housing Sergeant, respectively—were not constrained or reviewable by the KCCC warden.  (Compl. at 3.)

To the extent Plaintiff attempts to hold Defendant CCA liable under Section 1983 for the acts of its employees, Section 1983 liability cannot be imposed "vicariously on a theory of *respondeat superior*."  *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006).  *See also Smedley*, 175 F. App'x at 946 ("[A] private actor such as CCA 'cannot be held liable solely

---

[7] There is no allegation whatsoever of any involvement of Defendant Rediesel in the May 6, 2008 incident or any indication Rediesel had any personal participation with Plaintiff at all.

26

because it employs a tortfeasor—or, in other words . . . cannot be held liable under § 1983 on a

respondeat superior theory.' " (citation omitted)).

## VII.    *Qualified Immunity*

The State Defendants contend that the individual defendants are entitled to qualified

immunity in their individual capacities.  (State Defs.' Mot. at 13–14.)  Qualified immunity

shields government officials sued in their individual capacities from liability for civil damages

provided their conduct when committed did not violate "clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982).  When analyzing the issue of qualified immunity, the court must

determine (1) whether the plaintiff has sufficiently alleged violation of a statutory or

constitutional right; and (2) whether the right was clearly established at the time of the violation.

*Pearson v. Callahan*, 129 S. Ct. 808, 817 (2009).  Courts are permitted to exercise their

discretion in deciding which of the two prongs of the qualified immunity analysis should be

addressed first.  *Id.* at 818.  The plaintiff bears a heavy two-part burden in establishing that the

defendant violated clearly established law.  *Teague v. Overton*, 15 F. App'x 597, 600 (10th Cir.

2001).  "When a defendant asserts the defense of qualified immunity, the burden shifts to the

plaintiff to overcome the asserted immunity." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir.

2006) (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).  In light of the court's

findings that Plaintiff has failed to sufficiently allege a violation of his constitutional rights,

Defendants Zavaras, Dohrman, Lander, Scollard and Schwartz are entitled to qualified immunity

with respect to all claims asserted against them in their individual capacities.

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that Defendant CCA's Motion to Dismiss (Doc. No. 41) and the State

Defendants' "Motion to Dismiss" (Doc. No. 50) be **GRANTED**, and that Defendants

Corrections Corporation of America, Colorado Department of Corrections, Aristedes W.

Zavaras, Meryl Dohrman, James Lander, Jerie Scollard and Elizabeth Schwartz be

**DISMISSED**.

### ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and

file written objections to the Magistrate Judge's proposed findings and recommendations with

the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that

does not put the District Court on notice of the basis for the objection will not preserve the

objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and

recommendation must be both timely and specific to preserve an issue for de novo review by the

district court or for appellate review."  *United States v. One Parcel of Real Property Known As

2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make

timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's

decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection

28

does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 2nd day of November, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge